MAIER v GENERAL TELEPHONE COMPANY OF MICHIGAN

Docket No. 227825. Submitted September 12, 2001, at Lansing. Decided September 28, 2001, at 9:05 A.M. Leave to appeal sought.

William A Maier fractured his foot and ankle in March 1991 in the course of his employment with General Telephone Company of Michigan. In February 1992, Maier returned to his regular work duties but was restricted from climbing ladders. He continued to perform his regular duties with the climbing restriction until May 1998, when his employment was terminated by his successor employer, GTE North, Inc. Maier sought worker's disability compensation benefits. A hearing officer granted an open award of benefits, rejecting the argument that MCL 418.301(5)(d)(i) created a conclusive presumption of wage-earning capacity and finding that Maier had presented sufficient proof to rebut the presumption of wage-earning capacity contained in MCL 418.301(5)(d)(i). General Telephone and its insurer, American Motorist Insurance Company, appealed. The Worker's Compensation Appellate Commission reversed the hearing officer's award of benefits, holding that because Maier had been engaged in reasonable employment for a period exceeding 250 weeks, he was conclusively presumed to have established a new wage-earning capacity and was not entitled to worker's compensation benefits. Maier appealed by leave granted.

The Court of Appeals held:

1. MCL 418.301(5)(d)(i) provides that if a disabled employee who has been employed in reasonable work, that is, work that is within the disabled employee's limitations, for one hundred weeks or more loses employment through no fault of the employee, the employee is entitled to worker's compensation benefits if a hearing officer determines that the reasonable work that the disabled employee has undertaken has not established a new wage-earning capacity, but that there is "a presumption of wage earning capacity established for reasonable employments totaling 250 weeks or more." MCL 418.301(5)(e) provides that a disabled employee who has been employed in reasonable work for less than one hundred weeks and who loses the job for whatever reason is entitled to

receive worker's compensation benefits based on the employee's wage at the original date of the injury.

2. The Worker's Compensation Appellate Commission held that the presumption of wage-earning capacity for employees who had been employed in reasonable work for 250 weeks or more found in MCL 418.301(5)(d)(i) was a conclusive presumption, reasoning that a conclusive presumption of wage-earning capacity after 250 weeks of reasonable work balances the unstated conclusive presumption in MCL 418.301(5)(e) of no new wage-earning capacity for employees who have had reasonable work for less than one hundred weeks.

3. The Worker's Compensation Appellate Commission committed clear legal error in concluding that the presumption of wage-earning capacity found in MCL 418.301(5)(d)(i) with respect to employees who have been employed 250 weeks or more in reasonable work is conclusive rather than rebuttable. There is no basis in the plain language of that subsection to support the conclusion that the presumption is conclusive, and the Legislature elsewhere in the Worker's Disability Compensation Act has specifically provided that certain presumptions are conclusive. A conclusive presumption of a new wage-earning capacity is inconsistent not only with the general intent of the Worker's Disability Compensation Act to place the cost of providing weekly benefits to victims of work-related injuries on the employer in whose employment the injury was suffered but also with the specific intent of § 301 to encourage disabled workers to seek employment within their limitations.

Reversed and remanded.

WORKER'S COMPENSATION — PRESUMPTIONS — REASONABLE WORK.

The statutory presumption contained in the Worker's Disability Compensation Act that a disabled employee who has accepted reasonable work within the employee's limitations and who has continued in such work for 250 weeks or more is presumed to have established a new wage-earning capacity is a rebuttable rather than a conclusive presumption (MCL 418.301[5][d][i]).

*Carey, Kirk & Kihm* (by *Thomas D. Carey* and *Gary C. Newton*), for the plaintiff.

*Smith Haughey Rice & Roegge* (by *Jon D. Vander Ploeg*), for General Telephone Company of Michigan and American Motorist Insurance Company.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for GTE North, Inc., and Insurance Company of the State of Pennsylvania.

Before: O'CONNELL, P.J., and WHITE and SMOLENSKI, JJ.

PER CURIAM. Plaintiff, William A. Maier, appeals by leave granted from the May 19, 2000, opinion and order of the Worker's Compensation Appellate Commission (WCAC) reversing the magistrate's open award of worker's compensation benefits. We granted leave to consider whether the presumption of wage-earning capacity found in MCL 418.301(5)(d)(i) is conclusive. For the reasons set forth below, we reverse and remand.

The facts of this case are not in dispute. Plaintiff began his employment with defendant General Telephone Company of Michigan as a facility technician in February 1988. On March 1, 1991, plaintiff fractured his left foot and ankle after jumping from a falling telephone pole. After undergoing surgery, plaintiff returned to his regular work duties in February 1992. However, plaintiff was restricted from climbing ladders. Plaintiff continued to perform his regular work duties limited by the climbing restriction until May 29, 1998,[1] when his employment was terminated. According to the record, plaintiff was retained as an employee following his injury with the understanding that his climbing limitation was temporary. After being informed by plaintiff's treating physician that the limitation was permanent, GTE North, Inc., the

---

[1] Plaintiff was briefly laid off from work for the periods of December 9, 1994, to March 20, 1995, and July 19, 1996, to December 8, 1996.

successor employer of plaintiff, terminated plaintiff's employment.

As relevant to this appeal, plaintiff filed a claim seeking worker's compensation benefits on June 1, 1998. Following trial, the magistrate granted plaintiff an open award of benefits. In doing so, the magistrate rejected General Telephone's argument that MCL 418.301(5)(d)(i) precluded an award of benefits. Specifically, the magistrate found that plaintiff had presented sufficient proof to rebut the presumption of a wage-earning capacity pursuant to subsection 301(5)(d)(i).[2]

Defendants General Telephone and its insurer, American Motorist Insurance Company, appealed to the WCAC. In an opinion and order entered May 19, 2000, a split two-to-one panel reversed the magistrate's open award of benefits. The majority of the WCAC found that because plaintiff engaged in reasonable employment, MCL 418.301(9), for a period exceeding 250 weeks, he was conclusively presumed to have established a new wage-earning capacity and was not entitled to worker's compensation benefits. The following comments of the majority highlight the rationale supporting its decision.

> [I]f an employee is entitled to benefits without any inquiry into wage earning capacity for the period of less than 100 weeks [of reasonable employment, see MCL 418.301(5)(e)] then for work of 250 weeks or more, no inquiry into wage earning capacity is appropriate either.
>
> *          *          *

---

[2] The magistrate also dismissed defendants GTE North, Inc., and its insurer, Insurance Company of the State of Pennsylvania, as parties to this action.

The result compelled by the statute is indeed harsh, as [dissenting] Commissioner [James J.] Kent points out. But it is an equal harshness in light of the free reign given to employees in the period of under 100 weeks of reasonable employment. During this time period, an employee may perform perfectly regular work as reasonable employment, which would represent a wage earning capacity after injury, but even in circumstances where the employee is terminated for just cause unrelated to injury, this work cannot create a wage earning capacity as a matter of law. For less than 100 weeks the loss of work for reasons totally unrelated to the injury requires reinstatement of benefits without regard to the employee's actual wage earning capacity after injury. For 250 weeks or more, the performance of reasonable employment creates a presumption of wage earning capacity whether or not the employee loses the job for reasons unrelated to the injury. Both scenarios work injustices to particular parties in the more dramatic circumstances.

In a lengthy dissent, Commissioner Kent disagreed with the majority's analysis, concluding that the presumption of wage-earning capacity found in MCL 418.301(5)(d)(i) was rebuttable.

Whether the presumption of wage-earning capacity following 250 weeks or more of reasonable employment in subsection 301(5)(d)(i) is conclusive presents a question of statutory construction. We review de novo such questions of law. *Perez v Keeler Brass Co*, 461 Mich 602, 608; 608 NW2d 45 (2000). This Court "shall have power to review questions of law involved in any final order of [the WCAC] . . . ." MCL 418.861.

When reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). We begin by examining the plain language of the statute. Where that language is unambiguous, we presume that the Legislature intended the meaning

clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). We must give the words of a statute their plain and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). [*DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).]

Although this Court will ordinarily defer to the WCAC's interpretation of a provision of the Worker's Disability Compensation Act, (WDCA), MCL 418.101 *et seq.*, we will not afford such deference where the WCAC's interpretation of the pertinent statute is clearly incorrect. *Tyler v Livonia Public Schools*, 459 Mich 382, 388; 590 NW2d 560 (1999); *Jones-Jennings v Hutzel Hosp (On Remand)*, 223 Mich App 94, 105; 565 NW2d 680 (1997). Likewise, " 'a decision of the WCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework.' " *Sington v Chrysler Corp*, 245 Mich App 535, 540; 630 NW2d 337 (2001), quoting *DiBenedetto, supra* at 401-402.

MCL 418.301(5) provides in pertinent part:

If disability is established pursuant to [MCL 418.301(4)], entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:

*     *     *

(d) If the employee, after having been employed pursuant to this subsection for 100 weeks or more loses his or her job through no fault of the employee, the employee shall receive compensation under this act pursuant to the following:

(i) If after exhaustion of unemployment benefit eligibility of an employee, a worker's compensation magistrate or hearing referee, as applicable, determines for any employee covered under this subdivision, that the employments since the time of injury have not established a new wage earning capacity, the employee shall receive compensation based upon his or her wage at the original date of injury. *There is a presumption of wage earning capacity established for employments totaling 250 weeks or more.*

(ii) The employee must still be disabled as determined pursuant to [MCL 418.301(4)]. If the employee is still disabled, he or she shall be entitled to wage loss benefits based on the difference between the normal and customary wages paid to those persons performing the same or similar employment, as determined at the time of termination of the employment of the employee, and the wages paid at the time of the injury.

\*     \*     \*

(e) If the employee, after having been employed pursuant to this subsection for less than 100 weeks loses his or her job for whatever reason, the employee shall receive compensation based upon his or her wage at the original date of injury. [Emphasis supplied.]

The Legislature amended the WDCA to enact subsection 301(5) in 1981, codifying the judicially created favored-work doctrine. *McJunkin v Cellasto Plastic Corp*, 461 Mich 590, 595; 608 NW2d 57 (2000). The provisions of subsection 301(5) apply to disabled individuals who seek other employment. *Arnold v General Motors Corp*, 456 Mich 682, 690; 575 NW2d 540 (1998). "Subsections 301(5)(d) and 301(5)(e) establish specific guidelines for awarding wage-loss benefits to injured employees." *Sington, supra* at 544; see also *Russell v Whirlpool Financial Corp*, 461 Mich 579, 586; 608 NW2d 52 (2000).

The word "presumption" is not defined in the statute. Thus, it is appropriate for this Court to turn to its dictionary definition to ascertain its meaning. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). Black's Law Dictionary (6th ed), p 1185, defines presumption in the following terms.

> An inference in favor of a particular fact. A presumption is a rule of law, statutory or judicial, by which [the] finding of a basic fact gives rise to [the] existence of [a] presumed fact, until [the] presumption is rebutted.[3]

Unlike the WCAC majority, we find no basis in the plain language of subsection 301(5)(d)(i) to conclude that the *presumption* of a wage-earning capacity following 250 weeks or more of reasonable employment is conclusive. The Legislature has expressly manifested its intention that a presumption be considered conclusive in other provisions of the WDCA. See, e.g., MCL 418.331 (providing for conclusive presumption of dependency under certain circumstances); MCL 418.351(1) (regarding "conclusive presumption" of total and permanent disability). Conversely, the plain language of subsection 301(5)(d)(i) reveals no such manifest intention that the presumption of wage-earning capacity be considered conclusive. Absent any language indicating such an intention, we decline to infer one. " '[N]othing will be read into a statute that is not within the manifest intent of the Legislature as gathered from the act itself.' " *McJunkin*, *supra* at 598, quoting *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998).

---

[3] Black's Law Dictionary (6th ed), p 1186, further defines a *conclusive* presumption as "one in which proof of [a] basic fact renders the existence of the presumed fact conclusive and irrebuttable."

In our opinion, an interpretation of the presumption of a wage-earning capacity in subsection 301(5)(d)(i) as conclusive would directly contravene the well-settled mandate governing our Courts' interpretation of the WDCA. Specifically, the WDCA, as a remedial statute, must be "liberally construed to grant rather than deny benefits." *DiBenedetto, supra* at 402-403, quoting *Sobotka v Chrysler Corp (After Remand)*, 447 Mich 1, 20, n 18; 523 NW2d 454 (1994) (internal quotation marks omitted). The underlying purpose of Michigan's worker's compensation legislation "is to provide benefits to the victims of work-related injuries by placing the cost of making payments of weekly benefits to disabled employees on the employer." *Haske v Transport Leasing, Inc, Indiana*, 455 Mich 628, 641; 566 NW2d 896 (1997); see also *Eversman v Concrete Cutting & Breaking*, 463 Mich 86, 92; 614 NW2d 862 (2000). Additionally, § 301 "is intended to encourage disabled workers to seek employment within their limitations, which benefits everyone concerned, including the former employer." *Arnold,* supra at 691.

The WDCA expressly provides that an individual who refuses a legitimate offer of reasonable employment "without good and reasonable cause" is prohibited from receiving wage-loss benefits. See MCL 418.301(5)(a). Were we to conclude that the presumption of wage-earning capacity found in MCL 418.301(5)(d)(i) is conclusive and that disabled workers engaged in reasonable employment for 250 weeks or more are foreclosed from presenting evidence to rebut the presumption, disabled workers would be penalized for engaging in reasonable employment. In our view, "[i]t makes little sense to encourage an

employee to return to work by conditioning the receipt of benefits on the acceptance of reasonable employment," but then subject the employee to an inflexible conclusive presumption of wage-earning capacity that results in the denial of benefits. See *Kurz v Michigan Wheel Corp*, 236 Mich App 508, 515; 601 NW2d 130 (1999). Thus, we decline the invitation of defendant General Telephone Company of Michigan to interpret subsection 301(5)(d)(i) in a manner that would thwart the purposes underlying the WDCA.

A close review of the opinion of the WCAC's majority illustrates its concern with what it characterized as "the draconian symmetry" of the provisions of § 301. Specifically, the majority expressed its apparent dissatisfaction that if an individual's employment is terminated after engaging in reasonable employment for less than one hundred weeks "the employer is absolutely precluded from arguing that the new job created a new wage earning capacity." See MCL 418.310(5)(e). While we are not oblivious to the policy concerns highlighted by the majority of the WCAC, we are obligated to interpret subsection 301(5)(d)(i) according to its plain language. Any issues relating to the soundness of the policy underlying the statute or its practical ramifications are properly directed to the Legislature. In other words, this Court will not "rewrite the plain statutory language and substitute our own policy decisions for those already made by the Legislature." *DiBenedetto, supra* at 405. As now Chief Justice CORRIGAN, speaking for a unanimous Supreme Court, observed in *Calovecchi v Michigan*, 461 Mich 616, 624; 611 NW2d 300 (2000):

> [P]olicy questions are properly directed toward the Legislature rather than to [the] Court. [The Court's] duty is to

construe the text of the statute before [it], not to reach the policy result we judges think preferable. See *Jennings v Southwood*, 446 Mich 125, 142; 521 NW2d 230 (1994), quoting *City of Lansing v Lansing Twp*, 356 Mich 641, 648; 97 NW2d 804 (1959) (" 'The duty of the Court is to interpret the statute as we find it. The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which courts may not interfere' ").

Further, our conclusion that the presumption of wage-earning capacity following 250 weeks or more of reasonable employment is rebuttable is consistent with the opinion of a leading commentator on Michigan's worker's compensation law.

If the employee engages in subsequent employment for 250 or more weeks, all the conditions that apply to those who work for 100 weeks or more apply and there is a presumption that the subsequent work established a wage earning capacity. Sections 301(5)(d)(i), 401(3)(d)(i).

In *Derks v Munson Med Ctr*, 1999 Mich ACO 285, 12 MWCLR 1231 (1999), the commission held that the presumption is conclusive and irrebuttable. *This is questionable. If the legislature intended this to be a conclusive presumption, it would have said so.* [Welch, Worker's Compensation in Michigan: Law & Practice (4th ed), § 10.23, p 10-18 (emphasis supplied).]

Accordingly, we hold that the WCAC erred in interpreting the plain language of MCL 418.301(5)(d)(i) as creating a conclusive presumption of wage-earning capacity following 250 weeks or more of reasonable employment.

Reversed and remanded to the WCAC for proceedings consistent with this opinion. We do not retain jurisdiction.